IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | 2:05-cr-201-GEB |
| Plaintiff, | |
| v. | Sentencing Findings and Conclusions |
| ROMMEL SANTOS, | |
| Defendant. | |

Defendant Rommel Santos objects to the following parts of his Presentence Report ("PSR"): amount of loss, role in the offense, and the fine finding.  A sentencing hearing was held in this action on May 5, 2006.

Factual Findings Concerning the Case

On September 14, 2004, at approximately 1:30 a.m., Sacramento Sheriff Detective James Clausen responded to a call at the Payday Check Cashing Store located at 2202 El Camino Avenue in Sacramento.  Patrol officers had arrested a woman named Laurane Ivey for attempting to pass a counterfeit check there.  Inside the trunk of Ivey's car the officers found devices used to make

counterfeit checks: several financial documents, computer, printer, and a scanner. (Reporter's Transcript ("RT") May 5, 2006, 4, 6.) Two men were with Ivey who fled to avoid being detected. (Id. at 6-7, 27: 20-22.)  Ivey explained that a man later identified as Santos and another man identified as "Cowboy" accompanied her to the check cashing store where she attempted to cash the counterfeit check.

Santos was later apprehended and interviewed by Postal Inspector Steven Lamp and Detective Clausen. Santos admitted knowing that Ivey tried to cash the counterfeit check. He stated Cowboy created that check. (Exhibit ("Ex.") 9 at 2.)  Santos said he recruited Ivey to pass counterfeit checks. (Id.)  Santos said Ivey was taken to an apartment where she obtained the counterfeit check. (Id.)  Santos stated he witnessed Cowboy making counterfeit checks in the apartment. (RT 78-79.)

Santos and Cowboy escorted Ivey to the check cashing store so they could obtain their half of the proceeds, which they were to split equally. (Ex. 9 at 2.)  They rode in Ivey's car because Cowboy's car was experiencing mechanical problems. (Id. and RT 81.)  Santos put inside of Ivey's car the counterfeiting items that the police found in the trunk. (RT 80.)  Those items had been removed from the trunk of Cowboy's car, in which Cowboy usually kept a computer, scanner, and other counterfeiting items. (Id.)  The terms "workshop" and "office" were sometimes used to describe Cowboy's car. (Id.)  This indicates that the counterfeit check cashing scheme was a mobile illicit business.

Several bags containing stolen mail were also found in the trunk of Ivey's car. (RT 52.)  The contents of those bags

included mail matter, business checks, counterfeit checks, personal checks and bank statements. (Id.)  Santos received the stolen mail from Kevin Eisert.  Santos gave Cowboy stolen mail that Santos obtained from Eisert so Cowboy could use negotiable checks in that mail to make counterfeit checks. (Id. at 95.)  Both Santos's and Eisert's fingerprints were found on certain pieces of that mail. (Id. at 53.)

Earlier on September 13, 2004, two other people had attempted to cash counterfeit checks at the same store. (Id. at 11.)  Those checks were of the same style and from the same victims' accounts as those Santos had in the stolen mail. (Id. at 11-13.)

Eisert was arrested on September 2, 2004, when he tried to cash a counterfeit check. (Def. Ex. C at 11-17.)

The agreements devised for those cashing the counterfeit checks Cowboy created was that the person cashing the check would keep half the money and Santos and Cowboy were to split the other half equally.  (RT 84.)[1]

## Amount of Loss

"The court need only make a reasonable estimate of the loss." U.S.S.G. § 2B1.1 Commentary, Application Note (3)(c). Postal Inspector Lamp's testimony at the May 5 sentencing hearing indicates the amount of loss in this action was $295,000. (RT 56.) Those losses are identified in Exhibit 8, which was an exhibit at the May 5 sentencing hearing. (Id.)  But I find this evidence

---

[1] The statement in Paragraph 7 of the PSR that Santos received more than half of the proceeds is wrong, because he only received 25%, and Cowboy received the other 25%.

supports the finding that the intended loss amount is $229,000. This is based on testimony at the sentencing hearing, which I credit, that reveals any check with an account number could potentially be negotiated.  All checks at issue had account numbers on them, and were potentially negotiable.  Santos and his crime partner, Cowboy, had the materials and equipment for counterfeiting checks, and their scheme included recruiting people who could cash them.  The only evidence indicating Santos did not intend to take the full face value of the checks at issue, if he could have done so under the scheme, is his own testimony, which I do not credit on this point.  All of this evidence circumstantially supports the conclusion that Santos's scheme included cashing and attempting to cash as many counterfeit checks as could be cashed, at least until the money reflected in the full face value of stolen checks was obtained.  Although law enforcement intervention prevented realization of this goal, "such circumstantial evidence suffices to support an intended loss determination." United States v. Grant, 431 F.3d 760, 764 (11th Cir. 2005).

### Role in the Offense

Santos's offense level was increased by two levels in the PSR based on his participation in his criminal activities. Santos's objection to the increase is overruled since Santos was an organizer of criminal activity.  He was involved with recruiting other participants as check cashers in the fraudulent scheme; Ivey is one of those recruits.  Santos also took mail that had been stolen and provided it to Cowboy so counterfeit checks and identification could be made.  (RT 95:18-22, 15:13-24, 28:7-13; Ex. 9.)

4

<u>Fine</u>

Santos's objection to Probation's recommendation that he be fined the minimal fine of $7,500 is overruled.  Even though Santos is presently indigent, he has "sufficient earning capacity to pay the fine in the future."  <u>United States v. Haggard</u>, 41 F.3d 1320, 1329 (9th Cir. 1994).  As the Probation Officer said during the sentencing hearing held June 30, 2006, Santos's salary history indicates he could make over $4,000 per month in his occupation as a certified tile-setter, if he obtains employment.

Santos's position that a fine should not be imposed because he also has to pay $800 per month in child support is unpersuasive.  Paying a fine in addition to this child support should not be a hardship for him if he obtains employment in his trade.

Santos also argued that restitution he owes for past criminal conduct should preclude imposition of a fine.  Proof of the amount of that alleged restitution was not presented.  Further, it is not apparent why Santos's past restitutionary debt should allow him to avoid a penal consequence of his convictions.  The minimum fine at issue is an appropriate part of due punishment.

This ruling shall be attached "to any copy of the presentence report made available to the Bureau of Prisons."  Fed. R. Crim. P. 32(i)(3)(C).

IT IS SO ORDERED.

Dated:  June 30, 2006

/s/ Garland E. Burrell, Jr.
GARLAND E. BURRELL, JR.
United States District Judge